# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 15, 2012

## PERRY KIRKMAN v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2009-A-404      Steve R. Dozier, Judge**

---

**No. M2011-01781-CCA-R3-PC - Filed January 4, 2013**

---

The petitioner, Perry Kirkman, pled guilty in the Davidson County Criminal Court to two counts of aggravated sexual battery and received concurrent sentences of fifteen years in the Tennessee Department of Correction (TDOC). Thereafter, he filed for post-conviction relief, alleging that his counsel was ineffective and that his guilty pleas were not knowingly and voluntarily entered. The post-conviction court denied the petition, and the petitioner timely appealed. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

David M. Hopkins, Nashville, Tennessee, for the appellant, Perry Kirkman.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Rachel Sobrero, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The petitioner was initially charged in a multi-count indictment with displaying sexual acts to a minor (counts 1 and 13), rape of a child (counts 2-10, and count 12), and solicitation of rape of a child (count 11). The charges involved victims H.O. and S.O.[1] On April 22, 2010, the appellant pled guilty to the lesser-included offense of aggravated sexual battery of

---

[1] It is the policy of this court to refer to the minor victims of sexual crimes by their initials.

H.O. as alleged in counts 2 and 3 in exchange for the dismissal of the remaining counts. Although the petitioner was a Range I offender, he agreed to be sentenced as a Range II offender to concurrent sentences of fifteen years for each offense.

Subsequently, the petitioner filed a pro se petition for post-conviction relief. Counsel was appointed, and an amended petition was filed, alleging that petitioner's trial counsel was ineffective and that the petitioner's plea was not knowingly and voluntarily entered.

At the post-conviction hearing, the petitioner testified that he pled guilty approximately one year after trial counsel was appointed to represent him. The petitioner said that he spent about five months in jail before being released on bond. The petitioner said that his bond was revoked when he missed a court date and a capias was issued for his arrest. Approximately two months after his bond was revoked, the petitioner pled guilty.

The petitioner said that he met trial counsel approximately three times at trial counsel's office, with each visit lasting an hour or more. The petitioner stated that trial counsel provided him with some discovery materials prior to his pleas. However, after he pled guilty, trial counsel sent him a more extensive discovery packet that included information about potentially favorable witnesses and a medical report indicating that no physical evidence linked the petitioner to the crimes. The petitioner said that if he had been aware of the medical report, he would not have pled guilty and would have insisted on a trial.

The petitioner said that trial counsel advised him that he could receive a sentence of sixty to one hundred years if he were convicted at trial. Approximately one and a half months prior to trial, trial counsel informed the petitioner of a possible plea bargain that would require him to serve one hundred percent of a twelve-year sentence in confinement. The petitioner said that he was told by other people that he could earn deductions to reduce the sentence to eight or ten years. The petitioner maintained that counsel advised him that if he did not plead guilty, he risked being convicted of "13 charges at 20 years a piece." The petitioner said that after he pled guilty, other people advised him that he should have received a shorter sentence.

The petitioner said that regardless of what was said at the guilty plea hearing, he believed that he was receiving a twelve-year sentence, one hundred percent of which was to be served in confinement. He "wasn't clear" on what was being said by the trial court and the parties, but he thought they were discussing possible deductions to be applied to his sentence. The petitioner said that he could not recall whether the trial court or trial counsel advised him that he was pleading guilty and accepting a fifteen-year sentence. He stated that he signed the plea bargain before the guilty plea hearing and thought he could not speak during the hearing.

The petitioner acknowledged that he understood he was pleading guilty to a sexual offense but claimed that he was not sure of the exact offense. He said that at the time of his plea, he was not aware of what acts constituted an aggravated sexual battery. The petitioner said that trial counsel told him he was pleading to a lesser charge. The petitioner said that trial counsel advised him that he would be required to register as a sex offender, but he was not advised that he would be subject to lifetime supervision. The petitioner said that he would not have entered the guilty pleas if he had known about the lifetime supervision requirement.

The petitioner alleged that trial counsel failed to investigate his case, interview witnesses, and present defenses. The petitioner said that he gave trial counsel names of the victims' relatives who were willing to testify for petitioner. However, the petitioner said that trial counsel did not contact the witnesses.

On cross-examination, the petitioner said that he knew the State had evidence against him but that he was not aware of any evidence favorable to his defense. The petitioner said that after he was incarcerated, "someone explained [his] time sheet to [him,]" which made him realize that he had a longer sentence than he had thought. The petitioner asserted, "They're explaining to me it was two 15s and there is no parole, so I will flatten that. I wasn't – I understood that it was, you know, maybe 10 at the most." The petitioner said that prior to his plea, trial counsel informed him that he would be sentenced to twelve-years, but he could receive "deductions" reducing his time in confinement to ten years.

The petitioner said that trial counsel "[s]pent less than 60 seconds" explaining the plea agreement before the petitioner signed it. Trial counsel did not mention that petitioner was agreeing to a fifteen-year sentence. He said that he did not recall the trial court informing him that he was agreeing to a fifteen-year sentence.

The petitioner said that he pled guilty thinking that his sentence could be reduced by good time credits. However, the TDOC staff told him that he was not eligible for the credits or parole because of his offense. The petitioner said that trial counsel led him to believe that he was eligible for parole. He acknowledged, however, that trial counsel never promised he would receive parole. The petitioner maintained that the possibility of parole was a "big part" of his decision to plead guilty.

The petitioner said that trial counsel told him that the plea offer required him to plead guilty to two lesser offenses in exchange for the dismissal of thirteen charges. The petitioner did not like the twelve-year sentence attached to the plea offer. However, he acknowledged that two convictions were better than thirteen convictions and that a fifteen-year sentence was better than a potential sentence of over one hundred years.

-3-

The petitioner conceded that he knew he would be required to register as a sex offender, but he maintained that "I didn't really know what that means."

The petitioner said that he was innocent of the charges but that he pled guilty because he thought he did not have a defense to present at trial. Regarding the medical report, petitioner acknowledged that his last alleged contact with H.O. was at least several days prior to the victim's medical examination and that any DNA evidence would have been gone.

On redirect examination, the petitioner said that he had an eleventh-grade education and that he had no previous criminal court experience. However, he acknowledged that he had received a three-year probationary sentence for failure to pay child support. The petitioner said he had learned that H.O. had previously made three allegations of sexual abuse against members of her family. The petitioner thought the allegations called H.O.'s character into question. The petitioner said that at the time of his guilty pleas, he was not pleased with trial counsel's representation but that he was not aware he could tell the trial court he was dissatisfied.

On recross-examination, the petitioner said that he told trial counsel he did not want to enter a plea but that he nevertheless signed the plea agreement. The petitioner said that he wanted a sentence less than twelve years but that he pled guilty because he did not know he had any other option.

Trial counsel testified that he was an assistant public defender and that his practice was limited to criminal defense. Trial counsel said that he interviewed the petitioner's girlfriend, who was a potential witness, several times. He also spoke with the victims' relatives, but none of them had information that contradicted the victims' claims. Specifically, trial counsel said that there was no evidence the victims had made false allegations of sexual abuse. Trial counsel explained that the victims' relatives "had bad things to say about" the victims' mother; however, they did not have anything bad to say about the victims. None of the relatives' allegations were helpful to the petitioner's defense.

Trial counsel said that he met with the petitioner numerous times. Trial counsel had extensive contact with the petitioner's girlfriend and his mother. Trial counsel said that prior to trial, he and the State engaged in plea negotiations. Ultimately, the parties came to an agreement of fifteen years, with the provision that the plea would be entered over one month later to afford the petitioner time to have dental work performed. After the agreement was reached, the petitioner missed a court date. Plea negotiations resumed after the petitioner was picked up by police. Trial counsel did not know if the petitioner's failure to appear in court would affect the plea or if the petitioner would face additional charges.

Trial counsel said that he told the petitioner the plea agreement required him to plead guilty to two counts of aggravated sexual battery and that the remaining charges would be dismissed. Trial counsel advised the petitioner that he would receive "a 15-year sentence at 100 percent that could come down to 85 percent." Trial counsel said, "I don't know where he got that number of 12 from." Trial counsel denied that he and the petitioner discussed parole or that he told the petitioner he would get out of prison early because of overcrowding.

Trial counsel stated that he spent a considerable amount of time explaining the plea agreement to the petitioner and that the petitioner never indicated he did not understand it. Trial counsel maintained that on the day of the plea, he again reviewed the plea agreement with the petitioner, including the fifteen-year sentence to be served at 100%. The petitioner never told trial counsel that he did not want to plead guilty and instead wanted to go to trial. Trial counsel said that he would have stopped the plea hearing if the petitioner had appeared confused. Trial counsel said that although he did not "specifically remember the exact conversation," his notes reflected that he and the petitioner discussed the sexual offender registry and the lifetime supervision requirement in detail.

On cross-examination, trial counsel said that his notes reflected that he and the petitioner discussed the sexual offender registry and lifetime supervision on the day of the plea. He acknowledged that he did not recall any prior conversations about the sexual offender registry and lifetime supervision. Trial counsel stated that he probably advised the petitioner "that based upon the charges he was pleading to he would have to register multiple times during the year. And that he would have to be in touch with somebody who was supervising him, where he's living, where he's working . . . ." Trial counsel could not recall if he advised the petitioner that he faced restrictions on where he could reside and that he could not live with children. However, trial counsel said that "it seems like the types of things we would have discussed." Trial counsel acknowledged that the sexual offender registry and lifetime supervision were not mentioned in the plea agreement form. Trial counsel could not recall if the trial court informed the petitioner about the sexual offender registry and lifetime supervision.

Regarding discovery, trial counsel said that he provided the petitioner a full copy of everything he received immediately after trial counsel obtained it. Trial counsel said that the petitioner "didn't always want everything . . . like the statement for instance, he didn't want to listen to the statement." Trial counsel explained that although the petitioner denied the charges, he gave an incriminating statement to the police in which he admitted other sexual contact with the victims, including watching pornographic movies and masturbating. He also admitted that he took his son and the victims to a park, gave them condoms, and told them to have sex. However, the petitioner never admitted having sexual intercourse with the victims. Trial counsel stated that he and the petitioner discussed the lack of DNA evidence

against the petitioner and the medical report.

After the hearing, the post-conviction court accredited the testimony of trial counsel, finding that trial counsel thoroughly discussed the case with the petitioner, informed the petitioner of the charges against him, and reviewed with the petitioner the conditions of the guilty pleas, including the effective fifteen-year sentence, compliance with the sex offender registry, and lifetime supervision. The post-conviction court found that trial counsel investigated the case, spoke with witnesses, and discussed the medical report with the petitioner. The post-conviction court found that the petitioner understood the guilty pleas he entered. In conclusion, the post-conviction court found that the petitioner failed to establish his claims by clear and convincing evidence and thus denied the petition.

On appeal, the petitioner contends that prior to the entry of his guilty pleas, trial counsel failed to adequately inform him of the facts of his case; provide him with complete discovery, including the medical report; and advise him of the potential sentences he could receive if he were convicted at trial. The petitioner further contends that trial counsel told him that he would receive a twelve-year sentence pursuant to the plea agreement and that it could be reduced. The petitioner also believed he could be paroled. Finally, the petitioner maintains that trial counsel failed to inform him that as a condition of his pleas, he would be required to comply with the sex offender registry and submit to lifetime supervision. The petitioner maintains that if he had been adequately represented and informed of his options, he would not have pled guilty and would have insisted on going to trial.

## II. Analysis

To be successful in a claim for post-conviction relief, a petitioner must prove factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's

findings of fact de novo with a presumption that those findings are correct.  See Fields, 40 S.W.3d at 458.  However, we will review the post-conviction court's conclusions of law purely de novo.  Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense."  Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).  To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases."  Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).  To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.  Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim.  Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).  Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial."  Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury.  Boykin v. Alabama, 395 U.S. 238, 243 (1969).  Therefore, in order to comply with constitutional requirements a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant."  North Carolina v. Alford, 400 U.S. 25, 31 (1970).  In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the defendant of the consequences of a guilty plea, and determine whether the defendant understands those consequences.  Boykin, 395 U.S. at 244.

In determining whether the petitioner's guilty pleas were knowing and voluntary, this court looks to the following factors:

the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

As we stated earlier, the post-conviction court accredited the testimony of trial counsel. The court specifically found that the "petitioner's testimony as to his understanding of the length of sentence he was receiving is incredible." The court found that trial counsel investigated the case and shared the information he obtained with the petitioner, including the medical report indicating there was no physical evidence linking the petitioner to the crimes. The petitioner presented no witnesses at trial regarding his allegations that the victims' relatives would have helped his defense. Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We may not speculate on what benefit this witness might have offered to the petitioner's case, nor may we guess as to what evidence further investigation may have uncovered. Id. The transcript of the guilty plea hearing clearly reflects that the trial court informed the petitioner that he could be given up to 15% sentencing credit but that he was not guaranteed to receive the credit. Additionally, at the plea hearing, trial counsel stated that the petitioner appeared a bit confused, but the petitioner asserted that he understood the trial court's explanation. At the post-conviction hearing, the petitioner maintained that trial counsel incorrectly advised him that he could receive a sentence of one hundred years or more if he were convicted at trial. The petitioner was charged with ten counts of rape of a child, a Class A felony. See Tenn. Code Ann. § 39-13-522(b). As a Range I offender, the petitioner could have received a sentence of fifteen to twenty-five years for each offense. See Tenn. Code Ann. § 40-35-112(a)(1). If the trial court had ordered the sentences to be served consecutively, the petitioner could have faced a sentence of over one hundred years. The post-conviction court "acknowledge[d] that lifetime supervision was not addressed during the plea colloquy." However, the post-conviction court found that trial counsel informed the petitioner that he would be required to register with the sex offender registry and would be subject to lifetime supervision. Therefore, the post-conviction court found that trial counsel was not ineffective and that the petitioner's guilty pleas were knowingly and voluntarily entered. The evidence does not

preponderate against the findings of the post-conviction court. We conclude that the petitioner is not entitled to relief.

## III. Conclusion

In sum, we conclude that the petitioner is not entitled to relief. Therefore, the judgment of the post-conviction court is affirmed.

_____
NORMA McGEE OGLE, JUDGE